SHOWALTER, Circuit Judge
(after the foregoing recital). For reasons quite fully set forth in Standard Elevator Co. v. Crane Elevator Co., 22 C. C. A. 549, 76 Fed. 767, my individual opinion is’ that the decree of January 21, 1895, was the “final decision” so far as concerns the ownership, validity, and infringement of the patent. On this view that part of the decree of August 22, 1895, which declares the former decree as touching the points of ownership, validity, and infringement to be “confirmed,” is without legal effect, and no one of the assignments of error could be even inquired into. But assuming the former decree to have been in the respects mentioned interlocutory, it is the opinion of the court that there is no substantial error in the record. The patent in controversy concerns a force pump to be used in artificial refrigeration. Anhydrous ammonia in the gaseous state is by the downward movement of a solid pisten head first compressed in the cylinder which constitutes the body of the pump, and then expelled through the outlet valve into pipes and chambers, whereby it is first condensed into the liquid form, then conducted into the refrigerating room, where it expands again into the gaseous state, taking up in so doing the heat from surrounding objects, thence conducted back again to the inlet valve of the pump, and drawn once more into the cylinder by the upward movement of the aforementioned piston head, to be again compressed by the return movement and sent again on- the round described. The piston head is moved up and down by steam or some external force. The *921 operation of such a pump produces, maintains, and controls the state •of temperature necessary for the preservation of the property in the refrigerating room, or for manufacturing operations there carried ■on. Boyle’s patent shows two diagrams as below:

The specification of the patent contains the following statement:
“The nature o-f my invention consists in the construction and arrangement of ¿a. pump used in ice machines for liquefying the gas, as will be hereinafter more fully set forth. Figure 1 is a longitudinal section of my invention. Fig. 2 shows -one of the valves therein. A represents a pump cylinder, provided with heads, B, and B', bolted thereon in the usual manner. G is the piston or plunger, pro-vided with the piston rod, D, which passes through the head, B, and through a stuffing box, E, thereon. G is a tube or chamber running the entire length on the outside of the cylinder, and provided with the air inlet, G'. This air tube communicates with the interior of the cylinder, A, close to the head, B, through .a passage, a; and at the other end it communicates with one end of an air tube, G2, running across the head, B', on the outer side. This air tube, G2, is divided centrally by a cross partition, b, and the other end of said tube communicates with the air outlet, G3. The various air tubes or chambers are preferably east with a cylinder and head, as shown in the drawing, but may be arranged in any other suitable manner. Through the air tube or chamber, G3, on each side of the partition, b, is screwed a cage, the upper end of which -extends up into an aperture in the cylinder head, B', and at the joint are suitable shoulders, x, x, so that when the cage is properly screwed up the joint will be perfectly airtight. On the upper end of the cage, H, is formed a •seat, d, for the inlet valve, 1, which has a stem or rod, J, extending downward through guides, h, h, within said cage, and the valve held down to Its ■seat by a spiral spring, i, surrounding the stem between the guides. On the upper end of the cage, H', is formed a seat, d', for the outlet valve, I'. The valve stem, J', guides, h', and spring, i', are the same as in the first cage, except that the spring is arranged to hold the valve up to its seat. The lower ends of the cages, H, H', are closed by means of screw-caps, L, forming tight joints with the chamber, G2. The operation of the pump is readily under- : stood without further explanation.”
*922 The original claims were two, worded as follows:
“(1) A single-acting pump for liquefying gas for ice machines, in which the gas to he compressed has a free passage into the pump over the piston head as well as through the inlet valve under the piston head, where it is compressed, thus doing away with the necessity of having a valve in the piston head as set forth. (2) In a pump for liquefying gas for ice machines, I claim, the removable cages, H, H', with the valve seats, valves, and guides, substantially as and for.”
Each of these claims was rejected on references, and the following were substituted:
“(1) In combination with the cylinder, A, and its heads, B, B', the solid piston, head, 0, the tube, G, extending the entire length of the cylinder, the air tubes,. G', G2, air inlet, a, cages, H, H', having valves, I, I', and the outlet, G2, all constructed substantially as and for the purposes herein set forth. (2) In combination with the cylinder, A, and air tube, G2, the removable cages, H, H', provided with spring valves and exterior screw threads, and exterior screw caps, L, L, all substantially as and for the purposes herein set forth.”
The first claim is for a combination, one factor in which is the-“cages, H, H', having valves, I, I', * * * constructed substantially as and for the purposes herein set forth.” The specification and Fig. 1 of the drawings show two cages, each containing a valve, with its stem and guides, and a spring to press such valve back into-its seat after the inflow of gas in the one case or the outflow in the other, whereby the appropriate valve has been pushed from its seat, has ceased. The head, B', of the cylinder, which is one of the factors of the combination, is so constructed as to leave therein the spaces on either side of the partition, b, to be occupied by the valve cages. The word “cage” implies a structure complete in itself, and containing the valve with its incidental mechanism. This structure, as described in the specification and as shown in Fig. 1, is removable as an entirety from the head, B'. It is contended that the first claim must be understood as though the cages were integral with the head, B', and not removable. This in view of the words, “removable cages, H, H',” in the second claim, and Fig. 2 of drawings. The patentee says, speaking of his drawings: “Figure 1 is a longitudinal section of my invention. Figure 2 shows one of the valves therein.” The structure of the cage and its joints of connection with the head, B', is fully shown in Fig. 1. Fig. 2 was intended to show the inlet valve, and the mode of access whereby the gas is admitted to the under side of the same. Lines indicating the contour of the cage were not essential to the purposes of that figure. There is nothing in the specification to signify any possible construction of the valve inclosure other than a removable cage containing the valves. It is obvious, moreover, when the art to which the invention was to be applied is considered, that removable valve cages were deemed the important and characteristic feature of the invention.
The product of the combination of claim 1 is a state of temperature with reference not only to degree of cold, but to continuity under conditions where loss of property might result from any unduly protracted rise in temperature or stoppage of the pump. The removal of one cage in case of wear or accident and the substitution *923 of another within such an interval of time as will enable the machine to retain control of the temperature in a refrigerating room without endangering the property to be so preserved is the conception of the patent. If the quality of removability and substitution of cages had no other significance in this patent than mere convenience in mending the machine, the case might be different. But the removability of the cages affects the product of the combination. It would seem entirely clear that the cages, “H, H', having valves, I, VT * * constructed substantially as and for the purpose herein set forth,” of the first claim, are removable cages. Three prior patents, namely, the Seguin, the Harrison, and the Della, Beffa & West,, are chiefly insisted on as anticipations. In the first of these there is no removable valve cage. Each of the others is a double-acting pump. In the Harrison it is plain that the inlet valve could not be removed unless the lower cylinder head were taken off; nor in this patent is there any valve cage severable as a structure from the lower head. In the Della, Beffa & West it does not clearly appear that the cages are removable. But the pump in each of the last-named patents, as said, is a double-acting pump. The open and unobstructed inlet, a, which is one of the factors of the first claim of the patent in suit, is not found in either. The mode of operation dependent on this open inlet, a, is not found in either. Moreover, a removable valve cage as a factor in a combination to secure the result obviously proposed by the patent in suit is not even remotelv suggested by the structure of Harrison or that of Della, Beffa & West.
We cannot say that the combination of claim 1 does not contain invention, or that it is not novel. The pump as made by appellants is shown in vertical longitudinal section in the following cut:

As compared with the pump of the patent, that of appellants is inverted. The cylindrical jacket indicated by the rectangular spaces on either side is a water compartment, apparently to prevent heating. For the rest, each and every factor of claim 1 is shown. The cylinder, its two heads, and the solid piston head—that is, a piston head containing no valve opening—are obvious. The lower pipe *924 to the left and lengthwise the cylinder is the tube, G-, of the patent. The lower end of this pipe where it enters the cylinder is the inlet, a, of the patent. The upper vertical pipe to the left is the tube, G', of the patent; that to the right, the outlet, G3, of the patent. The open space above the cylinder with the partition in the center is G2 of the patent. The two removable cages containing the valves above the letters, a2, b2, are the “cages, H, IF, having valves, I, F,” of the patent. In appellants’ pump each of the horizontal surfaces constituting the four shoulders of each cage is pressed against the corresponding surface of the head so as to make airtight joints by a setscrew bearing directly on the cap. In the patent the upper shoulder is made tight by a screw thread on the exterior of the lower half of the cage, and the lower shoulder by the threaded cap, L, bearing in the contrary direction. But this is a detail of construction •showing a manner in which the horizontal joints, themselves the same in both devices, may be made airtight. This method of tightening the cage to the head is not specifically a feature of the first claim. Appellants’ pump, in our opinion, infringes the first claim of the patent in suit. As to the second claim, however, and especially in view of what took place in the patent office, the infringement is not clear. But as to this claim the matter of infringement is immaterial. If the pump made by appellants infringes the first claim, a holding by this court that it does not infringe the second would mean nothing. Neither the decree of January 21, 1895, nor that of August 22, 1895, declares in express terms, or even by necessary implication, any infringement of the second claim. A holding by this court that the second claim is or is not infringed would, on this record, afford no ground for even partial reversal, or for any direction of any kind. The decree is affirmed.